**John M. BREAUX, Appellant,**

**v.**

**Morris B. SLOCUM, Sr., Appellee.**

**No. 7030.**

Court of Civil Appeals of Texas.

Beaumont.

Feb. 20, 1968.

Motion for Rehearing Overruled
March 13, 1969.

**404**

Talbert, Giessel, Barnett & Stone, Houston, for appellant.

Sexton, Owens & Wingate, Orange, for appellee.

STEPHENSON, Justice.

This is an action for damages for personal injuries arising out of an automobile collision. Trial was by jury, and judgment was rendered for plaintiff upon the jury findings. The parties will be referred to here as they were in the trial court.

Plaintiff (Slocum) made the following allegations: That this collision occurred about 4:20 p. m., May 4, 1966, on Highway 87 at its intersection with Foreman Road in Orange County. That plaintiff was driving in a southerly direction on Highway 87 and came up behind an automobile headed in the same direction, which had stopped and was waiting to make a left turn off of Highway 87 onto Foreman Road. That defendant drove his automobile into the rear end of plaintiff's automobile, causing the damages complained of. That defendant was guilty of specific acts of negligence which proximately caused this collision.

Defendant (Breaux) made the following allegations: A general denial. That plaintiff's disability was caused by a football injury, and the following:

"II.

"Defendant would show that he was traveling at a reasonable rate of speed and keeping a proper lookout in front of him for vehicles when suddenly a vehicle stopped on State Highway 87 to make a left turn, the vehicle of the Plaintiff, Morris Slocum, was stopped but there were no brake lights showing on the Slocum vehicle and therefore the Defendant did not realize that the vehicles had stopped suddenly in front of him until he was fairly close to the Plaintiff's automobile. Immediately upon seeing the stopped automobiles, John Breaux hit his brakes and cut his automobile to the right just as any reasonable prudent person would have done under those circumstances but because the streets were very slippery and treacherous due to rain, John Breaux's vehicle went into a slide and struck the vehicle of the Plaintiff. These circumstances created what is known in law as a sudden emergency and the Defendant acting under this emergency operated his vehicle as any ordinary prudent person would have operated his vehicle under the same or similar circumstances. The accident was an unavoidable one insofar as John Breaux was concerned."

The jury found: That defendant failed to keep a proper lookout, and was operating his automobile at an excessive rate of speed, and that each of these was a proximate cause of this collision. The jury failed to find plaintiff guilty of any act of negligence or that he was acting in an emergency.

■ Defendant's first point of error is that the trial court erred in refusing to submit a special issue on unavoidable accident. The law is clear in this State that "unavoidable accident" is an affirmative defense, and must be plead in order to secure a submission of such issue. Kiel v. Mahan, 214 S.W.2d 865 (Tex.Civ.App., 1948, error ref. n. r. e.). Defendant requested a special issue asking whether or not this colli-

sion was not the result of an unavoidable accident, and defined that term as follows:

"By the term 'unavoidable accident' is meant an event that takes place without having been proximately caused by any negligence on the part of either Morris Slocum, Jr. or John Breaum [sic]."

■ We have concluded the paragraph in defendant's pleading quoted above is not a pleading of "unavoidable accident", even though the defendant used the word "accident" and "unavoidable" in the same sentence, such sentence follows immediately the pleading as to "sudden emergency". Defendant plead this accident was an unavoidable one insofar as he was concerned, which is nothing more than a statement that he, the defendant, was not guilty of negligence. It is apparent that defendant made no such statement insofar as plaintiff was concerned. Further, defendant did not ask leave of the trial court to file a trial amendment in order to plead unavoidable accident. Rule 279, Texas Rules of Civil Procedure, requires the trial court to submit the controlling issues made by the written pleadings and the evidence. We also have concluded, upon a reading of the entire record, that it does not appear that defendant intended that unavoidable accident be one of his theories of this case. The point is overruled.

Defendant's next point of error reads as follows, to-wit:

"The Trial Court erred in refusing Appellant a 'Van Zandt' special issue, inquiring whether or not plaintiff's injuries were the result of the accident made the basis of this suit."

Defendant does not inform this court where an assignment of error, upon which this point is based, can be found in his motion for new trial. As this point of error is worded, the impression is given that the complaint is the failure of the trial court to limit plaintiff in his recovery to injuries which resulted from this collision. The damage issue specifically asks the jury to find by a preponderance of the evidence the sum of money, if any, if paid now in cash, that will fairly and reasonably compensate plaintiff for his injuries and damages, if any, directly and proximately caused by the collision in question. The citing of Texas & Pacific Railway Company v. Van Zandt, 159 Tex. 178, 317 S.W.2d 528 (1958), indicates the complaint is the failure to submit an issue inquiring whether or not plaintiff received physical injuries. Paragraph VI of defendant's motion for new trial reads as follows:

"VI.

"The Court erred in refusing the Defendant's requested Special Issue F which reads as follows:

" 'Do you find from a preponderance of the evidence that the collision of May 4, 1966, made the basis of this suit, was a direct and proximate cause of physical injuries to the person of Morris Slocum, Jr.?' "

On this point, the Supreme Court had this to say in Van Zandt, supra, to-wit:

"In a large percentage of personal injury cases—perhaps in a majority—there is no question but that injuries were sustained. In such cases, the conventional issue on damages and accompanying instruction permits the jury in arriving at the amount of damages to be awarded to make an incidental determination of the nature and extent of the injuries suffered. But when the existence of injury is controverted in the evidence, it is not a sufficient submission of that ultimate and vital fact issue, over proper objection, to inquire whether a particular negligent act or omission was a proximate cause of plaintiff's injuries, if any, or what amount of money will compensate the plaintiff for the injuries, if any, sustained by him as a proximate result of the defendant's negligence, if any. In such cases a special issue directly and

unequivocally inquiring whether injury was sustained should be submitted."

■ Rule 279 is cited in this opinion in connection with the first point of error to demonstrate the rule of law that the court must submit to the jury the controlling issues made by the pleadings. As to the point of error now under consideration, Rule 279 also requires the controlling issue to have been raised by the evidence. If there is in reality no dispute as to whether a plaintiff has sustained an injury, then that issue is settled as a matter of law and its submission is not required. See Texas & Pacific Railway Company v. Moore, 329 S.W.2d 293 (Tex.Civ.App., 1959, error ref. n. r. e.).

■ We have concluded, from a study of the entire record, that there is no doubt but that plaintiff sustained *some* injury, and the real battle ground between the parties is as to the extent of plaintiff's injury, and as to the amount of plaintiff's disability caused by a football injury and a resulting operation on plaintiff's knee. The point is overruled.

Defendant's next two points of error, briefed together, contend the findings of the jury that defendant was negligent (speed and lookout) are contrary to the overwhelming weight and preponderance of the evidence. In passing upon these points of error, we consider the entire record.

■ Even though defendant's testimony tends to show he was not driving at an excessive rate of speed and was keeping a proper lookout, the jury was free to believe or disbelieve such testimony. The plaintiff testified: That he had been driving about 35 miles per hour until he came up behind the automobile stopped in his lane of traffic, waiting to turn left onto Foreman Road. That the interior lights showed plaintiff's turn indicators were working at the time he came to a stop behind the other automobile. That he looked in his rear view mirror and saw no closely approaching vehicles. That he slowed

down gradually to come to his stop. That he had been stopped 8 or 10 seconds before his automobile was struck by the one driven by defendant. Defendant testified he slapped on his brakes when he was three car lengths behind plaintiff and skidded right into him. He later testified he skidded about 30 feet on the rain-slick highway. The pictures of the automobiles involved in this collision, admitted in evidence, show the extent of the damage done. All of this evidence, together with reasonable inference therefrom, support the findings by the jury. We do not find such answers of the jury to be clearly wrong or manifestly unjust. These points of error are overruled.

Defendant's last point of error is that the amount of damages allowed plaintiff is excessive and that a remittitur should be required. The jury answered the damage issue, set out under the point of error in this opinion, $9,810.00. The elements contained in the instruction given by the court, in connection with the damage issue, were as follows:

"(a) Medical expenses;

(b) physical pain and mental anguish from date of collision until trial;

(c) future pain and anguish;

(d) loss of football scholarship;

(e) diminished capacity to earn money in the future."

Plaintiff gave the following testimony: He was 19 years old at the time of this accident, and 21 years old at the date of trial. Also, at the date of trial he was a student at McNeese State College, working as a football manager, with no football scholarship. In October or November, 1965, he suffered an injury to his right knee in a football game. The following day he had surgery to his knee, remained in cast until January, 1966, and then began to take exercise and build his knee up. He began to play touch football and tennis, and secured a release from Dr. Cloud to go out for the

tennis team, and was having no trouble with his knee. In the accident made the basis of this suit, defendant ran into the rear of the car plaintiff was driving. Plaintiff's car first struck the car in front of it, and then was knocked into the other lane of traffic, where it was struck by still another car going in the opposite direction. Plaintiff was stunned by the impact and was leaning against the door of his car when a man opened it and plaintiff fell out of his car to the pavement. The man helped him get up. Plaintiff did not tell anyone he was hurt at the scene of the accident. The next day, his leg was swollen, painful and discolored so he went to see Dr. Cloud at the emergency room at the hospital. The doctor sent him home and he stayed in bed three days. Plaintiff graduated from high school in May, 1966, after this collision. He had planned to go to Northeastern Louisiana State College on a football scholarship to study physical education, and to become a football coach. He was offered such a scholarship after his football injury and operation, but before this automobile accident. He had been offered no scholarship since this car accident. After his operation for the football injury, he was able to squat, bend knee in all ways and it was stronger than before. After the car accident, he cannot flex knee, it hangs up. His knee is unstable, he cannot make sudden turns, and it pops out of place. His knee tenses on climbing stairs, stiffens when not used for a time, and aches when the weather changes. His knee had not improved in the last two years.

Bill Dotson testified: He is assistant football coach at Northeastern Louisiana State University, and head line coach. He had scouted plaintiff as a football player, and thought he was good enough to play football as a freshman, which is unusual. He first saw plaintiff the night after the knee operation. Later, about March, 1966, he saw plaintiff again and committed himself to give plaintiff a football scholarship for four years worth about $1,800.00 per year. Plaintiff then had this car accident and did not accept the scholarship. A player who has not played college football would not be hired as a high school coach, but could be hired as a junior high school coach. A junior high coach would make about $1,200.00 per year less than a high school coach.

Dr. James Cloud gave the following testimony: He is an orthopedic surgeon. (His qualifications were stipulated.) He first treated plaintiff November 19, 1965, when plaintiff had received a severe injury to his right knee. He performed an operation repairing torn ligaments and removing some cartilage. The type of injury plaintiff had was not permanently disabling. Plaintiff made a normal recovery and was last seen for that injury February 7, 1966. At that time plaintiff's knee was feeling good. He had been playing touch football and the doctor was of the opinion plaintiff was able to play football. He gave plaintiff a slip for the school so plaintiff could play tennis. He next saw plaintiff May 5, 1966, in the emergency room at the hospital. Plaintiff told him he had been in an automobile accident, and complained of pain and swelling in the upper muscles of his right calf just below the knee. X-rays were taken (no bone injury) and he placed plaintiff on non-weight bearing crutch and heat treatment. At that time, plaintiff's right leg was tender and swollen below the knee and he diagnosed the condition as severe contusion and some tearing of the muscles of the right calf. He saw plaintiff in September, 1966, and the right knee was swollen markedly. The knee was aspirated, which is putting a needle in it and draining off the fluid. Irritating the knee joint will produce such condition. He next saw plaintiff April 19, 1967, when he had twisted his knee playing volleyball. The knee was swollen and was aspirated again. He saw plaintiff again January 17, 1968, at which time plaintiff complained of popping, giving way of the knee and swelling episode. After the automobile accident, plaintiff was not able to participate in contact sports, and will never be able to play football.

Plaintiff is not a cripple and can carry on a normal life, but cannot run and cut and that sort of thing.

It was stipulated plaintiff had a life expectancy of 51 years.

 Even though the statement made by another doctor is somewhat in conflict with the testimony of Dr. Cloud, all of the above evidence supports the amount of damages found by the jury. We do not find the amount of damages to be excessive.

Affirmed.